IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| DAVID DICKSON on behalf of themselves and all others similarly situated, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 1:13-CV-4222-TWT |
| ATLAS ROOFING CORPORATION, | |
| Defendant. | |

**OPINION AND ORDER**

This is a multi-district action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant Atlas Roofing Corporation's Motion to Dismiss [Doc. 36] Counts I (in part), II (in part), III, IV, V, VII, and VIII of the Plaintiffs David and Patricia Dickson's Complaint. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 36] is GRANTED in part and DENIED in part.

## I. Background

The Plaintiffs David and Patricia Dickson are purchasers of the Atlas Chalet Shingles ("Shingles"), which are designed, manufactured, and sold by the Defendant Atlas Roofing Corporation ("Atlas"). (Compl. ¶¶ 5-6.) Atlas represented and continues to represent – in marketing material and on the Shingles packaging – that the Shingles meet applicable building codes and industry standards. (Compl. ¶¶ 36, 40.) Atlas also provides a limited thirty-year warranty against manufacturing defects. (Compl. ¶ 39.)

The Plaintiffs claim that there is a defect in the process that Atlas uses to manufacture the Shingles. This process – which allegedly does not conform to applicable building codes and industry standards – "permits moisture to intrude into the Shingle which creates a gas bubble that expands when the Shingles are exposed to the sun resulting in cracking and blistering of the Shingles." (Compl. ¶ 46.) The Plaintiffs filed a class action lawsuit in the United States District Court for the District of South Carolina,[1] asserting claims for: breach of express warranty (Count I), breach

---

[1] "[I]n multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied." In re Conagra Peanut Butter Products Liab. Litig., 251 F.R.D. 689, 693 (N.D. Ga. 2008); see also In re Temporomandibular Joint (TMJ) Implants Products Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Here, both parties appear to

of the implied warranty of merchantability and fitness for a particular purpose (Count II), negligent design and manufacturing (Count III), strict products liability (Count IV), fraudulent concealment (Count V), violation of the Magnuson-Moss Warranty Act (Count VI), and unjust enrichment (Count VII). The Plaintiffs seek both damages and equitable relief.[2] The Defendant moves to dismiss Counts I (in part), II (in part), III, IV, V, VII and the Plaintiffs' request for equitable relief.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and

agree that South Carolina law governs the Plaintiffs' state law claims.

[2] The Plaintiffs' request for declaratory relief was labeled Count VIII.

Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S. Ct. at 1964).

### III. Discussion

#### A.   Negligent Design and Manufacturing (Count III) and Strict Products Liability (Count IV)

The Plaintiffs assert that the Shingles were negligently designed and manufactured, causing damage to the Shingles themselves as well as "physical injury to the underlying structures and other property of the Plaintiffs and the Class." (Compl. ¶ 10.) Additionally, the Plaintiffs assert that the Defendant is strictly liable for any damage because the Shingles are unreasonably dangerous. (Compl. ¶ 105.) Under South Carolina law, "[a] products liability case may be brought under several theories, including negligence, strict liability, and warranty." Bragg v. Hi-Ranger, Inc., 319 S.C. 531, 538 (Ct. App. 1995). "[I]n order to find liability under any products liability theory, the plaintiff must show: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably

dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant." Id. at 539. And "under a negligence theory, the plaintiff bears the additional burden of demonstrating the defendant (seller or manufacturer) failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault." Id. However, product liability torts are subject to the economic loss rule. Under South Carolina's economic loss rule, "there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself." Sapp v. Ford Motor Co., 386 S.C. 143, 147 (2009). Thus, "tort liability only lies where there is damage done to other property or personal injury." Id.

Here, the Plaintiffs' negligence and strict liability claims are foreclosed by the economic loss rule. The Plaintiffs only adequately allege damage to the Shingles themselves. Although they generally allege damage to "other property," this is too ambiguous. Indeed, this is precisely the "formulaic recitation of the elements of a cause of action" held insufficient to survive a motion to dismiss. See Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Thus,

these "vague and conclusory allegations [are] insufficient to state a claim for relief."[3]
Barr v. Gee, 437 Fed. Appx. 865, 878 (11th Cir. 2011).

    In response, the Plaintiffs argue – citing Kennedy v. Columbia Lumber & Mfg.
Co., Inc., 299 S.C. 335 (1989) – that the economic loss rule does not apply when a
plaintiff can establish an independent legal duty that was breached. It is true that the
Kennedy decision broadly stated that if a builder "acts in a way as to violate a legal
duty . . . [its] liability is both in contract and in tort." Id. at 345-46. However, in Sapp,
the South Carolina Supreme Court read Kennedy narrowly and concluded that it only
established a narrow exception applicable only to the residential builder context. See
Sapp, 386 S.C. at 148-49 ("In *Kennedy* . . . we created [a] narrow exception to the
economic loss rule to apply solely in the residential home context . . . we overrule
*Colleton Prep.* to the extent it expands the narrow exception to the economic loss rule
beyond the residential builder context."). The court confirmed that the exception to

-----

[3] At least one other court has found conclusory allegations of damage to "other
property" to be insufficient. See, e.g., In re: MI Windows & Doors, Inc. Products
Liab. Litig., 908 F. Supp. 2d 720, 725-26 (D.S.C. 2012) ("Hildebrand does allege that
MIWD's defective windows have caused damage to 'other property' within his home
and the homes of class members . . . he does not detail what this 'other property' is .
. . Hildebrand's sparse allegations do not meet the Rule 8 pleading standard."); In re
Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig., MDL
8:11-MN-02000, 2013 WL 1282219, at *7 (D.S.C. Mar. 27, 2013) ("Other than
conclusory statements concerning speculative and hypothetical damage to Haner's
property and that of the putative class members, the court finds that Haner has failed
to sufficiently allege any damage to 'other property.'").

the standard economic loss rule does not extend to "ordinary products liability claim[s]." Id. at 150.

This narrow exception is inapplicable here. Although the Defendant designs and manufactures a product that may be used on a residential facility, it is certainly not a residential builder.[4] This conclusion is supported by 2000 Watermark Ass'n, Inc. v. Celotex Corp., 784 F.2d 1183 (4th Cir. 1986), which was cited with approval in Sapp, 386 S.C. at 149-50 (citing 2000 Watermark in a footnote, and noting that "[s]everal opinions from the federal courts that were issued prior to *Kennedy* found South Carolina's economic loss rule precluded a negligence action against a manufacturer . . . [and] [w]e conclude the federal courts were correct in this regard."). There, the plaintiff asserted that it was sold negligently manufactured shingles. See 2000 Watermark, 784 F.2d at 1185. The Fourth Circuit held that, under South Carolina law, the plaintiff's claim was subject to the economic loss rule. See id. at 1187 ("[The

---

[4] The cases in which the exception has applied illustrate what is meant by "residential builder." In Kennedy, the South Carolina Supreme Court indicated that it had "discounted the necessity of showing physical harm in *Terlinde* . . . in which [it] . . . declined to adopt arguments asserting the 'economic loss' rule contained in the *Terlinde* briefs." Kennedy, 299 S.C. at 346. Terlinde was a case where the defendant had actually constructed the house. Terlinde v. Neely, 275 S.C. 395, 396 (1980). Likewise, in Beachwalk Villas Condominium Ass'n, Inc. v. Martin, 305 S.C. 144, 145 (1991), the economic loss rule did not foreclose a negligence claim against an architect that had designed a condominium project. The Plaintiffs cite to no case where the exception has applied to a manufacturer of a product that is merely incorporated into a residence.

plaintiff] cites the case of *Terlinde* . . . for the proposition that South Carolina permits negligence actions solely for economic loss . . . South Carolina has been in the vanguard of providing relief to her citizens who purchase new homes which have latent defects . . . [but] the application of these principles is limited to litigation involving latent defects in housing."). Accordingly, the Plaintiffs' negligence and strict liability claims should be dismissed.

### B. Fraudulent Concealment (Count V)

The Plaintiffs assert a fraudulent concealment claim against the Defendant. In support, the Plaintiffs allege that the Defendant was aware of the defect in the Shingles, and withheld this information from the Plaintiffs prior to and during the sale. "To establish fraud, the following nine elements must be shown: 1) a representation or *nondisclosure of a material fact*, 2) its falsity, 3) its materiality, 4) either knowledge of its falsity or a reckless disregard of its truth or falsity, 5) intent that the representation be acted upon, 6) the hearer's ignorance of its falsity, 7) the hearer's reliance on its truth, 8) the hearer's right to rely thereon, and 9) the hearer's consequent and proximate injury." Kiriakides v. Atlas Food Sys. & Servs., Inc., 338 S.C. 572, 586 (Ct. App. 2000) (emphasis added). "Non-disclosure becomes fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction." Pitts v. Jackson Nat. Life Ins.

Co., 352 S.C. 319, 335 (Ct. App. 2002). "The duty to disclose may be reduced to three distinct classes: (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties." Id. (citations omitted).

In moving to dismiss the Plaintiffs' fraudulent concealment claim, the Defendant first argues that the factual allegations do not support a finding that the Defendant had a duty to disclose the alleged defect. The Defendant cites to no authority for this argument. "Where material facts are accessible to the vendor only, and he know[]s them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor is bound to disclose such facts and make them known to the purchaser." Lawson v. Citizens & S. Nat. Bank of S. C., 259 S.C. 477, 485 (1972). Here, the Plaintiffs allege that the Defendant was aware of the defect and that it could not have reasonably been uncovered by the Plaintiffs. (Compl. ¶ 113.) Assuming these allegations to be true, there was a duty to disclose the alleged

defect. The Defendant then argues that the Plaintiff has not stated its fraudulent concealment claim with sufficient particularity. This argument is without merit. The Plaintiffs allege that at no time – including the time of sale – did the Defendant inform the Plaintiffs of the defect in the Shingles' manufacturing process which increased the likelihood of premature blistering and cracking. (Compl. ¶¶ 113, 116.) Thus, the Defendant's motion to dismiss the Plaintiffs' claim for fraudulent concealment should be denied.

### C.   Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose (Count II)

The Plaintiffs assert a claim for breach of the implied warranties of merchantability *and* fitness for a particular purpose. The Defendant moves to dismiss this claim only insofar as it is based on the implied warranty of fitness for a particular purpose. Under South Carolina law, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section (§ 36-2-316) an implied warranty that the goods shall be fit for such purpose." S.C. Code Ann. § 36-2-315. The Defendant argues that the Plaintiffs cannot assert a claim based on this implied warranty because the "particular purpose" for which they purchased the Shingles happens to also be the ordinary purpose for which the Shingles are used. (Def.'s Mot.

to Dismiss, at 9-10.) The South Carolina Supreme Court already rejected this argument. See Soaper v. Hope Industries, Inc., 309 S.C. 438, 440 (1992) ("[The defendant] contends that [the implied warranty of fitness for a particular purpose] applies only when the buyer has some particular use for a product other than the product's ordinary/contemplated use[,] [and] [a]lthough there is authority supporting this view, we decline to follow it.").[5] Thus, the Defendant's motion to dismiss the Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose should be denied.

### D. Breach of Express Warranty (Count I)

The Plaintiffs assert a breach of express warranty claim based on both a limited warranty provided by the Defendant, as well as certain representations made by the Defendant in its marketing material. (Compl. ¶ 69.) The Defendant moves to dismiss the Plaintiffs' breach of express warranty claim only insofar as it is based upon the representations made in the Defendant's marketing material. Under South Carolina law, "[i]n order to establish a cause of action for breach of an express warranty, a

---

[5] The Defendant quotes a part of the Soaper decision which reads: "We hold that, where the particular purpose for which a product is purchased is also the ordinary or intended purpose of the product, the warranties of merchantability and of fitness for a particular purpose merge and are cumulative . . .." Soaper, 309 S.C. at 440. The Defendant, however, omits the conclusion of that sentence: "such that a plaintiff may proceed upon *either theory*." Id. (emphasis added).

plaintiff must show the existence of the warranty, its breach by the failure of the goods to conform to the warranted description, and damages proximately caused by the breach." Burton v. Chrysler Grp. LLC, CIV.A. No. 8:10-00209, 2012 WL 831843, at *3 (D.S.C. Mar. 12, 2012) (internal quotation marks omitted). Additionally, "[a]ny affirmation of fact or promise, including those on containers or labels, made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods conform to the affirmation or promise." S.C. Code Ann. § 36-2-313(1)(a). "[R]ecovery has been allowed on the theory of express warranty . . . where the purchaser of an article relied on representations made by the manufacturer in advertising material." Triple E, Inc. v. Hendrix & Dail, Inc., 344 S.C. 186, 191 (Ct. App. 2001) (quoting Odom v. Ford Motor Co., 230 S.C. 320, 328 (1956)).

The Defendant first argues that the Plaintiffs have failed to sufficiently describe the representations and where they were made. This argument is without merit. The Plaintiffs allege that the Defendant – in the Shingles brochures and on the Shingles packaging itself – represented that the Shingles were manufactured in accordance with applicable building codes and industry standards. (Compl. ¶¶ 36, 69, 71.) The Defendant then argues that the Plaintiffs have failed to allege that they relied on this representation. This argument also fails. The Plaintiffs allege that they would have

purchased shingles from a competitor if the Defendant had not made the allegedly incorrect representations. (Compl. ¶ 72.) Thus, the Defendant's motion to dismiss the Plaintiffs' claim for breach of express warranty – insofar as it is based upon the representations made in the Defendant's marketing material – should be denied.

### E. Unjust Enrichment (Count VII)

The Plaintiffs assert a claim for unjust enrichment based on payments that the Defendant accepted for the Shingles. "To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." Inglese v. Beal, 403 S.C. 290, 297 (Ct. App. 2013). However, "one cannot recover for unjust enrichment where an express contract exists." Atherton v. Tenet Healthcare Corp., No. 2005-UP-362, 2005 WL 7084013, at *5 (S.C. Ct. App. May 25, 2005). Here, the warranties – which form the basis of the Plaintiffs' claim for restitution – are contracts. See Roundtree Villas Ass'n, Inc. v. 4701 Kings Corp., 282 S.C. 415, 423 (1984) ("A warranty of either kind [express or implied] is, in effect, a contract."). The Plaintiffs do not dispute this. The Plaintiffs instead argue that they may still assert an unjust enrichment claim in the alternative. This misunderstands the Defendant's argument. Although the Defendant disputes the existence of a plausible

contract *claim*, it never disputes the existence of the contracts themselves. In fact, the

Defendant expressly acknowledges that it provides a limited warranty, and it does not

seek dismissal of the Plaintiffs' claim for breach of the implied warranty of

merchantability. (Def.'s Mot. to Dismiss, at 9-10.) The existence of these contracts

precludes the Plaintiffs' unjust enrichment claim, and so it should be dismissed.

### F. Declaratory Judgment (Count VIII)

The Plaintiffs seek a declaratory judgment stating that:

a.   The Shingles [have] a defect which results in premature failure;
b.   Defendant's warranty fails of its essential purpose;
c.   Certain provisions of Defendant's warranty are void as unconscionable;
d.   Defendant must notify owners of the defect;
e.   Defendant will reassess all prior warranty claims and pay the full costs of repairs and damages; and
f.   Defendant will pay the costs of inspection to determine whether any Class member's Shingles needs replacement.

(Compl. ¶ 142.) As an initial matter, the Defendant requests that the Court use its

discretion to decline the Plaintiffs' declaratory relief request because it overlaps with

other claims brought in this action. (Def.'s Reply in Supp. of Mot. to Dismiss, at 8-9.)

For example, the Defendant argues that many of the Plaintiffs' other claims – e.g.,

breach of express warranty and implied warranty of merchantability – will require a

determination as to whether the Shingles were defective. "Since its inception, the

Declaratory Judgment Act has been understood to confer on federal courts unique and

substantial discretion in deciding whether to declare the rights of litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Id.</u> at 288. "[T]he range of considerations available to the district court in deciding whether to entertain the declaratory action is vast." <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1137-38 (11th Cir. 2005). The Eleventh Circuit "has previously recognized convenience of the parties . . . as relevant." <u>Id.</u> at 1135.

Here, the Plaintiffs' argument is that there will be potential class members whose Shingles have not yet blistered or cracked. Consequently, they argue, these potential class members will not have ripe claims for breach of express and implied warranties. Thus, there is no redundancy because these class members – at the time of litigation – will *only* qualify for declaratory relief. This is a permissible purpose for seeking declaratory relief.[6] <u>See</u> <u>Hardware Mut. Cas. Co. v. Schantz</u>, 178 F.2d 779, 780

---

[6] The Seventh Circuit explained the mechanics of such an approach when it affirmed a district court's decision to certify two classes in a products liability suit:

> The court split the purchasers of windows into two groups: those who have replaced their windows, and those who have not. Those who have replaced their windows are properly members of the (b)(3) class because they require the award of damages to make them whole. Those who have not replaced their windows but might in the future because of the purported design flaw are properly members of a (b)(2) class. Such purchasers would want declarations

(5th Cir. 1949) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty."); <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950) ("The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked."). And given that the Court will have to resolve nearly identical factual issues with the other claims, it would be an efficient use of judicial resources to permit this declaratory judgment claim.

The Defendant also makes multiple arguments for why the Plaintiffs have nonetheless failed to state a claim for declaratory relief. The Defendant first argues that the Plaintiffs must establish irreparable injury and the lack of adequate legal remedies in order to receive declaratory relief. (Def.'s Reply in Supp. of Mot. to Dismiss, at 9-10.) No, they do not. <u>See</u> <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 241 (1937) ("[A]llegations that irreparable injury is threatened are not required."); <u>Katzenbach v. McClung</u>, 379 U.S. 294, 296 (1964) ("Rule 57 of the Federal Rules of Civil Procedure permits declaratory relief although

---

that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows *when they manifest the defect*, or final equitable relief.

<u>Pella Corp. v. Saltzman</u>, 606 F.3d 391, 395 (7th Cir. 2010) (emphasis added).

another adequate remedy exists."). The Defendant then argues that the Plaintiffs' declaratory judgment claim must be dismissed because it abridges the Defendant's right to a jury trial. (Def.'s Reply in Supp. of Mot. to Dismiss, at 10-11.) But "[a] litigant is not necessarily deprived of a jury trial merely because it is a party to a declaratory judgment action . . . if there would have been a right to a jury trial on the issue had it arisen in an action other than one for declaratory judgment, then there is a right to a jury trial in the declaratory judgment action." Northgate Homes, Inc. v. City of Dayton, 126 F.3d 1095, 1098-99 (8th Cir. 1997); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959) ("[T]he Declaratory Judgment Act . . . specifically preserves the right to jury trial for both parties."); Simler v. Conner, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions as petitioner requested . . . [and] the courts below erred in denying petitioner the jury trial guaranteed him by the Seventh Amendment.").

Finally, the Defendant argues that the Plaintiffs have failed to state a plausible claim that they are entitled to a declaration that the Defendant must inspect the Shingles of every class member. (Def.'s Reply in Supp. of Mot. to Dismiss, at 12-13.)

The Court agrees. The Plaintiffs reference no basis – in law or contract – for why any putative class members would be entitled to such an inspection. The Defendant points out, correctly, that even assuming a breach of warranty – e.g., that the Defendant did not manufacture the Shingles as per applicable industry standards – a plaintiff has no right to recovery absent some harm. Cf. Wilson v. Style Crest Products, Inc., 367 S.C. 653, 658 (2006) ("[T]he defective products the plaintiffs had purchased had performed satisfactorily and, therefore, the courts found that the plaintiffs had reaped the benefit of their bargain and could not bring a warranty action."). Thus, the Plaintiffs' request for a declaration that the Defendant must "pay the costs of inspection to determine whether any Class member's Shingles needs replacement," (Compl. ¶ 142), should be dismissed.

## IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Defendant's Motion to Dismiss [Doc. 36].

SO ORDERED, this 12 day of May, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge